IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LISA ACKERMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-0058-N |
| | § | |
| HOME DEPOT, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's motion for summary judgment, filed on December 14, 2004, Plaintiff's motion for leave to amend, filed on January 15, 2005, and Plaintiff's motion to strike, filed on April 29, 2005. For reasons discussed below, the motion for summary judgment is granted, and the motions for leave and to strike are denied.

## I. BACKGROUND

Plaintiff Lisa Ackerman is an employee of Defendant Home Depot, Inc. ("Home Depot"). She began working for Home Depot on August 2, 1986 as a "Computer Room Associate" in a home improvement store in California. In this capacity she performed various back office duties of a mostly clerical nature. Approximately one year after hiring Ackerman, Home Depot promoted her to "Computer Room Supervisor," which entailed supervising several other computer room employees. At her own instance and that of Home Depot, she subsequently transferred to Home Depot stores in Arizona, Massachusetts, Rhode Island, Oklahoma, and Texas. No computer room positions were available in Dallas when Ackerman requested a transfer to that city in 1993, so she accepted a "Service Desk"

position.  She requested a return to the computer room, however, and in 1998 she transferred to a Computer Room Supervisor position in the Plano EXPO (the "EXPO"), a "design center" operated by Home Depot.

Ackerman has two principal grievances against Home Depot.  The first relates to her job title.  In January 2001, Home Depot eliminated the Computer Room Supervisor position companywide.  Ackerman again became a "Computer Room Associate."  The change did not significantly affect Ackerman's duties, as there were no other computer room employees at the EXPO for her to supervise.  Her wages and benefits remained as they were before the demotion. Ackerman complained about the demotion but never sought a promotion or transfer.

The second grievance relates to Ackerman's wages, which came to significantly exceed the wages of employees performing comparable functions in Dallas.  Also in January 2001, Ackerman's performance reviewer informed her that her hourly wage would be capped at $23.11, because her manager considered her overpaid and her wages generated jealousy on the part of coworkers, including EXPO assistant managers who earned less money than Ackerman.  Ackerman remained eligible for, and received, yearly bonuses.  In January 2002, Home Depot instituted a companywide "Performance Management Initiative" (the "PMI") to standardize wages by position and geographic area.  Under the PMI, Computer Room Associates in Dallas fell into a class with a minimum wage of $7.90 per hour and maximum wage of $16.97 per hour.  Ackerman still earned $23.11 per hour.  The PMI provided additional grounds for capping Ackerman's wages.

Ackerman's wages have caused tension between her and Home Depot. She alleges that managers and coworkers have harassed her on the grounds that she is overpaid, and have given her unpleasant and burdensome job assignments in order to find grounds for terminating her. She has in turn complained about the PMI to immediate managers and – through an extensive "letter writing campaign" – to top executives of Home Depot and EXPO and to President George W. Bush.

On March 7, 2003, Ackerman filed an EEOC charge alleging age and sex discrimination and retaliation. In particular, the charge complained that Ackerman had been demoted and that she was subject to harassment, such as being referred to as a "high paid janitor," in retaliation for objecting to the PMI. The EEOC rejected this charge as untimely, and then upon reconsideration concluded there was no evidence of discrimination and dismissed the charge. This suit followed. Ackerman alleges that Home Depot's treatment of her constitutes intentional infliction of emotional distress, sex discrimination, age discrimination, and retaliation for protected activities.

## II. HOME DEPOT IS ENTITLED
### TO SUMMARY JUDGMENT

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) makes Summary judgment appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits presented, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute about a material fact is "genuine" only if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must demonstrate the absence of any genuine issue of material fact, *Celotex*, 477 U.S. at 322-23, and the Court construes all evidence in favor of the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citation omitted).

### B. Home Depot Is Entitled to Summary Judgment on Ackerman's Claim for Intentional Infliction of Emotional Distress

To recover for intentional infliction of emotional distress under Texas law, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 616 (Tex. 1999). Without expressing any conclusion with respect to the other elements, the Court concludes that there is no basis in the summary judgment evidence for Ackerman's claim that Home Depot engaged in extreme and outrageous conduct.

In order to be extreme and outrageous, conduct must be:

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct. Similarly, mere insults, indignities, threats, annoyances, petty oppressions, or other

trivialities do not rise to the level of extreme and outrageous
conduct.

*Id.* at 611-612.  Relative to courts in some other states, Texas courts are reluctant to categorize workplace behavior as extreme and outrageous.  *Id.* at 612.  A claim for intentional infliction of emotional distress does not lie for "ordinary employment disputes," and it is very rare that conduct in the employment context is so egregious as to elevate it out of this category and into the realm of the extreme and outrageous.  *Id.* at 613.

The present case is an ordinary employment dispute.  Ackerman identifies no facts in support of this claim other than the facts that also underlie her employment law claims. Ackerman wants higher wages, a different job title, and to be granted certain additional responsibilities and relieved of others.  Her demands conflict with the assessment of supervisors and coworkers that she is already overpaid and is not entitled to her other demands.  Even crediting Ackerman's allegations that supervisors have rudely expressed their disapproval of her wages, inappropriately disclosed her wages to her coworkers, and intentionally given her difficult or unpleasant assignments, none of her allegations rise to the level of extreme and outrageous conduct in the employment context.  Indeed, Ackerman implicitly concedes this deficiency in her instant Response: She recognizes "that her burden on this issue is high" and then fails to identify any specific conduct as extreme and outrageous or otherwise address this element of the offense.  Accordingly, Home Depot is entitled to summary judgment on this claim.

### C.  Home Depot Is Entitled to Summary Judgment
### on Ackerman's Sex Discrimination Claim

Because Ackerman's Title VII sex discrimination claim is based on circumstantial evidence, the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.  *See Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003).  Ackerman bears the initial burden to present a prima facie case of discrimination by showing (1) she belongs to protected group; (2) she was qualified for the position sought; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class.  332 F.3d at 881.  If Ackerman presents a prima facie case, the burden shifts to Home Depot to articulate a legitimate nondiscriminatory justification for its actions. *Id*.  If Home Depot meets this burden, the burden shifts back to Ackerman to show that the proffered reason is a pretext for discrimination.  *Id.*  At this point, the relevant burden is Ackerman's burden to prove the elements of her case, *see St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 519 (1993), and the normal summary judgment standard applies.  In order to survive the motion for summary judgment, the employee must produce evidence that the articulated reason is mere pretext for discrimination, such that a genuine issue of material fact exists as to the actual motive for termination.  *See Medina v. Ramsay Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001).

In her instant brief, Ackerman asserts two bases for her sex discrimination claim. First, she claims she was demoted from Computer Room Supervisor to Computer Room Associate in January 2001 because of her gender.  She claims she was "replaced" by a male employee, because the duties of "Front End Supervisor" James McCulloch overlapped with

the former duties of Computer Room Supervisors when McCulloch began to share computer room office space with Ackerman in April 2004.

The Court assumes, without deciding, that Ackerman has stated a prima facie sex discrimination claim.  Home Depot claims that Ackerman was demoted because Home Depot eliminated the position of Computer Room Supervisor companywide.  Ackerman presents not a scintilla of evidence that this ground for eliminating the position was pretext for sex discrimination.  In particular, she cites no examples of men who were allowed to retain the title of Computer Room Supervisor in January 2001.  Moreover, Home Depot made the decision to eliminate her position at the corporate level, while Ackerman's purported evidence for discrimination depends entirely on her inferences and subjective assessment of choices made by her local managers.  Her claim that Front End Supervisor James McCulloch performed duties formerly assigned to Computer Room Supervisors in 2004 does not contradict Home Depot's proffered explanation, and the bare fact that a man held this position in her particular location three years after the companywide change that resulted in her demotion would not permit a reasonable jury to find discriminatory intent.[1]

The second purported basis for Ackerman's sex discrimination claim is that she was never considered for "key carrier" privileges, which entail access to cash register drawers. She never requested key carrier status, but claims that it was assigned only to men on the basis of "hand select[ion] by the managers." The Court again assumes, without deciding, that Ackerman has stated a prima facie case of sex discrimination.  The affidavit of Ackerman's

---

[1] Ackerman does not claim to have applied for the position of Front End Supervisor or any other promotion.

manager states that Home Depot does not allow Computer Room Associates to be key carriers as a matter of internal checks and balances, in light of Computer Room Associates' access to store vaults and ledgers.  Ackerman's only response is that she was never informed of this policy, which is not surprising considering that she never sought key carrier privileges.  Ackerman acknowledges that at least one key carrier at her location was a woman, and presents no evidence that Home Depot's explanation is pretext for sex discrimination.

One additional claim deserves brief attention.  Portions of Ackerman's deposition testimony and instant brief suggest that she maintains a claim for gender-based harassment.  In particular, she claims that she "never witnessed management harassing men over their wages the way she was harassed."  Ackerman cannot prevail on such a claim because her own deposition testimony indicates that any harassment was not gender motivated.  In order to prevail on the Title VII sex discrimination case on the basis of harassment or hostile work environment, the plaintiff must demonstrate, inter alia, that "[t]he harassment complained of was based on sex."  *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).  Ackerman repeatedly alleges in her deposition testimony that she was "singled out" based on her wages, and was therefore treated differently from all other Home Depot employees.  When invited to identify the basis of her sex harassment claim, Ackerman changed the subject to "my wages . . . get[ing] thrown in my face considerably all the time."  She explicitly alleges that other women at Home Depot were not subject to the harassment she faced.  Title VII provides no cause of action for wage-based harassment, and Ackerman presents no facts

suggesting that anyone at Home Depot harassed her because she is a woman. Accordingly, Home Depot is entitled to summary judgment on Ackerman's sex discrimination claim.

### D. Home Depot Is Entitled to Summary Judgment on Ackerman's Age Discrimination Claim

The Court evaluates Ackerman's age discrimination claim under the rubric of disparate impact. According to Ackerman's instant brief, her age discrimination claim derives entirely from the assertion that policies related to the PMI cap Ackerman's salary and limit her overtime opportunities, thereby "treat[ing] Ackerman differently than the younger associates." Ackerman does not claim that Home Depot adopted the PMI with discriminatory intent or that local managers applied it inconsistently. Rather, she claims that the structure of the PMI inherently disadvantages older workers. This is a disparate impact claim. *See Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1284 (5th Cir. 1994) (disparate impact analysis applies to facially neutral employment practices that fall more harshly on one group than another). At the time the parties briefed the motion for summary judgment, Fifth Circuit precedent did not permit disparate impact claims under the Age Discrimination in Employment Act. *See Smith v. City of Jackson* 351 F.3d 183, 196 (5th Cir. 2003). The Supreme Court recently held, however, that the ADEA allows such claims.[2] *Id.*, *upheld on alternate grounds*, 125 S.Ct. 1536 (March 30, 2005).

---

[2] Home Depot made a supplemental filing to inform the Court of the Supreme Court's *City of Jackson* decision and briefly argue that summary judgment is appropriate in the present case under that decision. Rather than responding, Ackerman moved to strike the supplemental filing. Home Depot's supplemental filing was appropriate under the circumstances. Accordingly, Ackerman's motion to strike is denied.

Ackerman does not establish a prima facie disparate impact case. As part of her prima facie case, she must show that Home Depot maintains a facially neutral policy or practice that disparately impacts employees over the age of 40. *See Frank v. Xerox Corp.*, 347 F.3d 130, 135 (5th Cir. 2003) (discussing requirements for a prima facie Title VII disparate impact case). This requires a "systemic analysis" of the policy or practice, which "must, of necessity, rely heavily on statistical proof." *Id.* (quoting *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 1989)). Ackerman presents no statistical proof that the PMI or any other Home Depot policy disparately impacts workers protected under the ADEA. She merely claims that she personally is over the age of 40, that Home Depot policy caps her salary and limits her overtime opportunities, and that younger workers are not similarly affected. The scant summary judgment evidence contradicts even this claim. The PMI caps the wages of only three employees (out of ninety) at Ackerman's location. One is Ackerman.[3] The other two are 35 and 51 years of age, respectively. The only other employee whose wages the parties discuss is a 69 year old man who continues to receive yearly raises under the PMI. This evidence does not establish any correlation between membership in the protected class and adverse effects from the PMI. Accordingly, Ackerman does not meet her burden to

---

[3] Ackerman's situation in particular does not lend itself to inferences about the PMI's effect on older workers. At least the following factors complicate any analysis of the relationship between her age and her wages: (1) She has worked for Home Depot in six states and at least nine locations; (2) She transferred from a Computer Room Supervisor position to a Service Desk position; (3) She transferred from a regular Home Depot store to the EXPO, where she was paid as "supervisor" though she supervised no employees; (4) She continued to work in the computer room after a demotion, rather than applying for a promotion or transfer. Through this varied history, Ackerman's wages ratcheted upward but never downward.

demonstrate systemic adverse impact, and Home Depot is entitled to summary judgment on Ackerman's age discrimination claim.

### E. Home Depot Is Entitled to Summary Judgment on Ackerman's Retaliation Claim

To prevail on her retaliation claim, Ackerman must establish a prima facie case by showing (1) she participated in an activity protected by the ADEA or Title VII ; (2) she was subject to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (ADEA); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (Title VII).

Ackerman alleges two protected activities and a litany of adverse actions. The protected activities are (1) "the letter writing campaign she instituted complaining of the unlawful discrimination against her," and (2) filing an EEOC charge in March, 2003. She alleges that she suffered adverse employment actions in that Home Depot (1) demoted Ackerman from Computer Room Supervisor to Computer Room Associate in January 2001; (2) capped her wages and denied her overtime from January 2001 on; (3) did not consider her for a key carrier position; (4) assigned some of her former job duties to Front End Supervisor James McCollough in early 2004, and never considered Ackerman for that position; (5) removed her personal belongings from the computer room prior to moving McCollough's office into that room; and (6) assigned unpleasant and burdensome job duties to Ackerman at various times. Ackerman alleges in her deposition testimony that at least six different managers are responsible for retaliating against her.

Without regard to the other requirements, Ackerman fails to present a prima facie retaliation claim because she does not present evidence of a causal connection between any particular protected activity and any particular adverse decision.  It is not enough to allege that the management team was generally ill disposed toward the plaintiff when an adverse decision was made, and speculate that protected activities contributed to this disposition. *See, e.g., Septimus v. University of Houston*, 399 F.3d 601 (5th Cir. 2005), *rehearing and rehearing en banc denied*, --- F.3d --- (5th Cir. March 2, 2005) (affirming summary judgment against Title VII retaliation plaintiff, where plaintiff alleged decision maker's knowledge of recent protected activities along with "ongoing harassment" from another manager, and merely speculated that retaliation played a role in decision).  Yet Ackerman does nothing more than this.  She alleges in broad strokes that all of her supervisors subjected her to "retaliation and harassment" from 2001 onward.  She repeatedly attributes this behavior to resentment of her high wages.  As evidence for retaliation, Ackerman can only offer deposition testimony expressing her subjective belief that her formal complaints contributed to her supervisors' pre-existing propensity to make decisions adverse to her interests.  In contrast, Ackerman refers the Court to no evidence that any person with decisional power over a particular adverse employment action ever responded negatively to Ackerman engaging in a particular protected activity or did anything else to suggest that a subsequent decision was retaliatory.  Accordingly, Ackerman fails to establish a prima facie case of retaliation, and Home Depot is entitled to summary judgment on that claim.

### III. CONCLUSION

If her deposition testimony is credited, it appears that Plaintiff Ackerman has encountered tension in her workplace because she considers herself underpaid, while her employer and many of her coworkers and supervisors consider her overpaid. Regardless of who is right on this issue, Defendant Home Depot is entitled to summary judgment on Ackerman's claims for intentional infliction of emotional distress, sex discrimination, age discrimination, and retaliation. Accordingly, the motion for summary judgment is granted. Because the Court reaches this conclusion without addressing the issue of timeliness, Ackerman's motion for leave to amend her complaint to state a continuing violation claim is denied as futile. Ackerman's motion to strike Home Depot's supplemental filing addressing new authority is also denied.

SIGNED May 31, 2005.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 13